## URGENT MOTION UNDER CIRCUIT RULE 27-3(b)

### No. 13-35354

### IN THE UNITED STATES COURT OF
### APPEALS FOR THE NINTH CIRCUIT

---

OCWEN LOAN SERVICING, LLP, AS SERVICING AGENT FOR HSBC
BANK USA, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE OF
THE FIELDSTONE MORTGAGE INVESTMENT TRUST, SERIES 2006-1,

Appellant,

v.

ROBERT S. BLENDHEIM and DARLENE G. BLENDHEIM,

Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

The Honorable Marsha J. Pechman

Case No. 11-CV-02004-MJP (Lead)
Case No. 11-CV-02006-MJP
Case No. 12-CV-00647-MJP
Case No. 12-CV-01255-MJP

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

The Honorable Marc L. Barreca

Bankruptcy No. 09-10283-MLB
Adv. Proc. No. 10-01203-MLB

---

### URGENT MOTION FOR STAY PENDING APPEAL

Date or event by which action is necessary: Entry of an Order Closing

the Bankruptcy Case No. 09-10283-MLB, which could occur as early

as October 7, 2013

Christopher M. Alston, WSBA No. 18823
W. Adam Coady, WSBA No. 44165
FOSTER PEPPER PLLC
1111 Third Avenue, Suite 3400
Seattle, Washington  98101-3299
(206) 447-4400

Attorneys for Appellant Ocwen Loan
Servicing LLC, as servicing agent for HSBC
Bank USA, National Association, as
Indenture Trustee of the Fieldstone
Mortgage Investment Trust,
Series 2006-1

Appellant HSBC Bank USA, National Association, as Indenture Trustee of the Fieldstone Mortgage Investment Trust, Series 2006-1, by its servicer Ocwen Loan Servicing, LLC ("Lender), respectfully moves for a stay pending its appeal to the Ninth Circuit Court of Appeals of the following orders entered by United States Bankruptcy Court for the Western District of Washington that were affirmed by this Court: (1) Order Granting Plaintiffs' Renewed Motion for Summary Judgment for Lien Avoidance; (2) Order Confirming Chapter 13 Plan; and (3) Order in Aid of Implementation of Plan (the "Orders on Appeal"). In the alternative, Lender requests a stay of the provisions in the Orders on Appeal that provide Lender's lien will be void and cancelled when the debtors complete their Chapter 13 case. A stay is necessary to prevent the debtors from transferring or encumbering their real property free of Lender's lien without providing Lender any notice of the transfer. If the debtors transfer an interest in the real property to a third party, the Court will be unable to provide effective relief to Lender even if Lender prevails on its appeal. A stay is therefore needed to prevent irreparable harm to Lender.

## I. GROUNDS FOR MOTION

The District Court entered an Order Affirming Bankruptcy Court which contains factual findings. Declaration of Christopher M. Alston ("Alston Dec.") at Ex. A. Lender refers the Court to that Order for evidentiary support of the following background facts.

## A. Bankruptcy Case Background

Several years ago, debtors and appellees Robert and Darlene Blendheim (the "Blendheims") faced a foreclosure on their condominium on Beach Drive in West

1

Seattle (the "Condo").  The Blendheims sought bankruptcy protection under Chapter 7 of the Bankruptcy Code in May 2007.  They declared the Condo was subject to two liens:  one securing a debt of $347,900 owed to Lender, and the other securing a debt of $90,474.02 owed to the holder of a loan serviced by HSBC Mortgage Services ("HSBC").[1]  Shortly after the case was filed, Lender obtained relief from the automatic stay to pursue its remedies against the Condo.  The day after receiving a discharge in their Chapter 7 case, the Blendheims sought protection under Chapter 13 of the Bankruptcy Code on January 15, 2009.

Lender filed a proof of claim in the Chapter 13 case.  In October 2009, the Blendheims filed an objection to Lender's proof of claim.  Lender did not respond to the objection.  On November 9, 2009, Blendheims submitted a declaration of no objection and the Bankruptcy Court entered an order disallowing the claim (the "Default Order").

The Blendheims subsequently commenced an adversary proceeding to void Lender's lien based upon the Default Order (the "Adversary Proceeding").  The Blendheims moved for summary judgment on their claim for lien avoidance.  The Court declared it could not rule on the Blendheims' motion because the Default Order was not a final order.  Lender then filed a motion to set aside the Default Order.  On June 28, 2011, the Bankruptcy Court entered an order denying Lender's motion (the "Claim Disallowance Order") which confirmed the Default Order.

---

[1] HSBC is the servicing agent for the owner of this second mortgage.  HSBC is also the Indenture Trustee of Lender.  HSBC's name thus appears, somewhat confusingly, in connection with both loans.

After entry of the Claim Disallowance Order, the Blendheims renewed their motion for summary judgment in the Adversary Proceeding. The Bankruptcy Court entered the Order Granting Plaintiffs' Renewed Motion for Summary Judgment on August 19, 2011 (the "<u>Lien Avoidance Order</u>"). The Lien Avoidance Order states that Lender's deed of trust will be void "upon Debtors' completion of a Bankruptcy." Lender then appealed the Lien Avoidance Order, the Default Order, and the Claim Disallowance Order.

The Blendheims filed another amended plan on March 14, 2012 (the "<u>Final Plan</u>"). The Final Plan incorporates the Lien Avoidance Order and provides upon "Plan Completion" Lender's lien will be void and cancelled. The Final Plan also provides that HSBC's lien will no longer be stripped upon plan completion. While HSBC's lien remains on the Condo, HSBC receives no payments under this plan.

After a hearing on confirmation and on Lender's motion to dismiss, a text order was entered confirming the Final Plan on April 13, 2012 (the "<u>Plan Confirmation </u>Order"). Subsequently the Blendheims sought an order to supplement the Plan Confirmation Order, and the Bankruptcy Court eventually entered such an order on July 18, 2012 (the "<u>Implementation Order</u>"). The Implementation Order a) denies Lender's motion to dismiss, b) states Lender's lien will be void and cancelled upon plan completion, and c) modifies the order voiding HSBC's lien and reinstates HSBC's lien to extent allowable under non-Bankruptcy law to ensure the strip-off of this lien is not completed. Lender timely appealed these two orders.

**B.** **The District Court Denies the Blendheims' Motion to Dismiss the Appeals But Affirms the Bankruptcy Court Orders.**

In November 2012, the Blendheims filed a motion in the District Court to dismiss Lender's appeals as moot because Lender did not obtain a stay of the Plan Confirmation Order. The District Court denied the motion, noting that no assets have been sold to third parties, no transactions occurred that are intricate or difficult to unwind, and there were no changed circumstances that would render it inequitable to consider Lender's appeal. Alston Dec. at Ex. B.

On March 29, 2013, this Court entered a judgment in favor of Blendheims stating the Bankruptcy Court did not err in its rulings and affirming all of this Court's orders in their entirety. The Court also entered an Order Affirming Bankruptcy Court which provided an explanation for the judgment. Lender timely appealed both the judgment and the order to this Court.

**C.** **The District Court Denies Lender's Motion for Stay Pending Appeal.**

As noted above, the District Court denied the Blendheims' motion to dismiss the appeal on the basis that no transactions had transpired or were about to transpire that could not be unwound. However, it became apparent in late spring 2013 that the Blendheims had approximately two months of payments left under their Plan. In May, Lender sought a stay pending appeal from the District Court.[2]

---

[2] Pursuant to Fed. R. Bankr. P. 8005, Lender first filed a motion for a stay pending appeal with the Bankruptcy Court. The Bankruptcy Rules are not entirely clear as to whether such a motion should be filed first in the Bankruptcy Court or, because an appeal is pending the Circuit Court, in this Court. Desiring to avoid denial of a stay motion by the District Court solely on the basis that Lender did not first make the request to the Bankruptcy Court, Lender filed the motion with the Bankruptcy Court. On May 23, the Bankruptcy Court issued an order denying the stay motion on the basis that Fed R. Bankr. P. 8017 rather than 8005 applies and therefore any

In the motion, Lender argued the Lien Avoidance Order, the Plan Confirmation Order and the Implementation Order dictate that Lender's lien will be voided and cancelled when the Blendheims complete their plan. At that time the Blendheims will be able to sell or transfer their Condo to third parties free of Lender's lien, or convey secured liens on the Condo to third parties. Lender asserted that it will permanently lose its interest in the Condo even if it prevails on appeal. Alston Dec. at Ex. D.

On August 5, the District Court entered an order denying Lender's motion for a stay. Alston Dec. at Ex. E. In its ruling, the District Court examined the four factors to be considered when ruling on a motion for a stay: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

The District Court found that Lender satisfied the first prong. Lender asserted the Bankruptcy Court erred by allowing the Blendheims to permanently avoid Lender's lien upon Chapter 13 completion in a Chapter 20 case despite the fact that the Blendheims are ineligible to receive a discharge. While the District Court rejected Lender's position and found the Lender had not shown a likelihood of success, the District Court concluded Lender raised a new issue that has not decided by this Court. By showing serious legal questions exist on this issue, Lender met the first factor. *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983). Order Denying Stay at 6.

---

stay motion must be decided by the District Court rather than Bankruptcy Court. *See* Alston Dec. at Ex. C.

The District Court concluded, however, that Lender did not satisfy the second prong. The District Court ruled that while the Blendheims may complete their Chapter 13 plan during the pendency of the appeal and thereby make irreparable harm to Lender possible, Lender presented no evidence that the Blendheims have any plans or intentions of transferring the Condo that might demonstrate a probability of harm. Order Denying Stay at 6. The District Court also concluded the other factors did not support the stay motion, finding 1) a stay would harm the Blendheims by preventing the Blendheims from receiving a "fresh start," and 2) the public interest is not a relevant consideration because the case is between two private parties and is unlikely to a have wide-reaching effect on non-parties. *Id*. at 7.

**D.** **The Blendheims Will Soon Be Able to Permanently Void Lender's Lien.**

When Lender filed the Motion for Stay in the District Court, Lender could only speculate when the Blendheims would complete the plan payments. It is now apparent that the Blendheims have completed the payments and soon will be able to transfer or encumber the Condo without notice to Lender. The Blendheims each filed a Domestic Support Certification on August 19, which is due within 30 days of completion of all plan payments. Local Bankr. R. W.D. Wash. 3015-1(h); Alston Dec. at Exhibit F. More importantly, the Chapter 13 Trustee filed and served a Notice of Final Cure Payment on August 15, 2013. Alston Dec. at Ex. G. In this Notice, the Chapter 13 Trustee states the amount to cure the default on the claim of the Condo Association has been paid in full, and any party has 21 days to file a response stating whether or not it agrees the claim has been paid. *Id*.

Since the Blendheims have completed their plan payments, the cancellation of Lender's lien will soon follow. The Lien Avoidance Order entered in the adversary proceeding states, "Upon Debtor's completion of a bankruptcy, this

order shall be self-executing and [Lender's] Deed of Trust, set forth below, is void pursuant to 11 U.S.C. § 506(d), and hereby cancelled." [Emphasis added.] Alston Decl. at Ex. H. The Implementation Order contains slightly different language and states, "The First Position Lien, set forth as follows, is void and cancelled upon plan completion." Alston Dec. at Ex. I. Now that the Blendheims have completed their plan payments, the Chapter 13 Trustee will submit a final report required by 11 U.S.C. § 704(9) (made applicable by 11 U.S.C. § 1302(b)) after the September 5 deadline to object to the Notice of Final Cure Payment passes. The Bankruptcy Court can then enter an order closing the case if no party objects to the final report within 30 days. 11 U.S.C. § 350 (after the case is fully administered and the trustee discharged, the bankruptcy court shall close the case); Fed. R. Bank. P. 5009(a) (if no objection to Chapter 13 trustee's report within 30 days, there shall be a presumption that the estate has been fully administered). Until the case is closed, there exists the possibility that the case could be dismissed and, pursuant to 11 U.S.C. § 349(b)(C), Lender's lien could be reinstated. But once the Bankruptcy Court enters an order closing the case, the Blendheims will be free to transfer or encumber the Condo free of Lender's lien. And that order could be entered as early as October 7, 2013.

Lender expects the Blendheims will record the Lien Avoidance Order and the Implementation Orders in order to remove Lender's lien from title. Lender's fear concern is not speculative. When the Blendheims obtained the order avoiding HSBC's second position lien, they quickly recorded the order with the King County Records Department. Alston Dec. at Ex. J. The Blendheims will certainly take all steps necessary to remove Lender's lien from title, and they will have no obligation to notify Lender of these efforts or any plans to transfer an interest in the Condo. Since the bankruptcy case will be closed, the Blendheims will be free to take any actions with respect to the Condo without notifying creditors or seeking

permission from the Bankruptcy Court. Lender will not receive any notice if the Blendheims are about to sell the Condo or grant another deed of trust on the Condo to a third party. While the District Court denied Lender's stay motion because it had no evidence that the Blendheims have any plans or intentions of transferring the Condo, Lender does not know how it could ever obtain such evidence.

## II.    RELIEF SOUGHT

Appellant seeks an order that stays the Orders on Appeal or, in the alternative, that stays the provisions in the Orders on Appeal that provide Lender's lien will be void and cancelled when the Blendheims complete their bankruptcy case.

## III.    LEGAL ARGUMENT

### A.    <u>Lender's Motion for Stay Complies with Fed. R. App. P. 8(a)(2) and Circuit Rule 27-3(b).</u>

Lender seeks a stay pursuant Fed. R. App. P. 8(a)(1). A party may obtain such relief from this Court upon a showing of either 1) moving first in the District Court would be impracticable or 2) the movant made the motion and the District Court denied the motion or failed to afford the relief requested, and the reasons given by the District Court for its action. Fed. R. App. P. 8(a)(2)(A). Lender brought the stay motion before the District Court, which denied the motion for the reasons stated in Section I.C. above.

Lender also has complied with Fed. R. App. P. 8(a)(2)(B) by stating in this Motion the reasons for granting the relief requested and the facts relied on, by providing a sworn statement supporting all facts including any facts that may be subject to dispute, and by providing relevant parts of the record. Lender also has complied with Fed. R. App. P. 8(a)(2)(C), as it has provided reasonable notice to the Blendheims of this motion. Lender's counsel informed counsel for the

Blendheims on August 20 that Lender intended to file this Motion and request a ruling as soon as possible.  Alston Dec. at ¶ 15.

Lender also has complied with Circuit Rule 27-3(b).  Lender has notified opposing counsel and is serving the Motion as it is being filed.  The relief sought by this Motion was available in District Court.  All grounds advanced in support of this Motion were submitted to the District Court.

**B.** **Grounds Exist to Enter a Stay Pending Appeal.**

The factors to consider for a stay pending appeal are (1) whether the applicant has made a strong showing that he it likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *Nken v. Holder*, 556 U.S. 418, 426, 129 S.Ct. 1749 (2009), *citing Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113 (1987).

Analyzing the Supreme Court's decision, this Court recently concluded the "balancing approach" employed by courts in this jurisdiction remains in place after *Nken* but is slightly modified.  *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).  After *Nken*, a party seeking a stay in the Ninth Circuit must show that irreparable harm is probable and either (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay, or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor.  640 F.3d at 970.

### 1. Likelihood of Succeeding on the Merits.

In *Leiva-Perez*, the Court clarified the movant need not show that ultimate success is probable. 640 F.3d at 966. While there are many ways to articulate the minimum quantum of likely success necessary to justify a stay, none demand a showing that success is more likely than not. *Id.* at 967-68. In order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits. *Id.* at 968.

Lender recognizes the District Court has already ruled in favor of the Blendheims and affirmed the Bankruptcy Court's orders. Nonetheless, Lender believes it meets the requirement because it has a substantial case for relief on the merits.

Initially, it is important to note this Court's review of the Chapter 20 lien strip issue is *de novo*. *In re LPM Corp.*, 300 F.3d 1134, 1136 (9th Cir. 2002) (bankruptcy court's interpretation of the Bankruptcy Code reviewed *de novo*). With respect to the Lien Avoidance Order, which was entered on a summary judgment motion, that order also should be reviewed *de novo*. *In re AFI Holding, Inc.*, 525 F.3d 700, 702 (9th Cir. 2008). Whether adequate notice has been given for purposes of due process is a mixed question of law and fact reviewed *de novo*. *In re Brawders*, 503 F.3d 856, 866 (9th Cir. 2007).

### a. Because the Blendheims Are Not Eligible for a Discharge They May Not Permanently Void Lender's Lien.

The Blendheims are not eligible for a discharge because they received a discharge in a Chapter 7 case filed less than four years before the order for relief in

their Chapter 13 case. 11 U.S.C. § 1328(f)(1). Lender maintains that the Bankruptcy Code prohibits the Blendheims from permanently voiding Lender's lien by merely completing a plan without obtaining a discharge.

A decision from a bankruptcy court in the Southern District of California, *In re Victorio*, 454 B.R. 759, 778 (Bankr. S.D. Cal. 2011), *aff'd*, *Victorio v. Billingslea*, 470 B.A. 545 (S.D. Cal. 2012),provided a detailed examination of Bankruptcy Code and concluded a Chapter 13 debtor may not permanently avoid a lien absent a discharge. *Victorio* observed Congress knew how to make the avoidance of liens "permanent" if it wanted that result, but it chose not to do so with liens avoided under § 506(d). 454 B.R. at 776. For example, liens avoided under § 522(f) are not reinstated on dismissal, nor set aside on conversion. *Id.* The *Victorio* court also noted the 2005 amendments to the Bankruptcy Code were obviously intended to restrict, not expand, the rights of debtors. *Id.* at 779. Section 306 of the BAPCPA amendments, which added subsection (i)(I) to Section 1325(a)(5)(B), was entitled "Giving Secured Creditors Fair Treatment in Chapter 13." Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 23, 80. The legislative history of this section demonstrates that Congress included these additions "to require—as a condition of confirmation—that a chapter 13 plan provide that a secured creditor retain its statutory lien until the earlier of when the underlying debt is paid or the debtor receives a discharge." H.R.Rep. No. 109–31, pt. 1 at 71–72 (2005).

Furthermore, if debtors are allowed to strip off liens in Chapter 20 cases, then secured creditors receive worse treatment than unsecured creditors. When a

Chapter 20 debtor completes his or her Chapter 13 plan, the debtor's status with creditors is returned to the *status quo ante*. Any remaining unsecured debt is not eliminated by the discharge and those creditors may pursue their debtor. *Victorio*, 454 B.R. at 779. But if the same debtor is allowed to permanently strip liens upon plan completion, then creditors with security interests in real property are not returned to the *status quo ante* and may not pursue *in rem* claims at the conclusion of the case. The dissenting judge in a recent decision from the Fourth Circuit declared that such a result "turns on its head" the basic bankruptcy principle that secured creditors are treated more favorably than unsecured creditors. *In re Davis*, 716 F.3d 331, 341 (4th Cir. 2013) (Keenan, J., dissenting). Even though the Bankruptcy and District Courts already rejected Lender's arguments, Lender believes it has a stated a substantial case on the merits on this issue and at least has shown a serious legal question.

### b. The Blendheims Filed Their Case in Bad Faith.

When the Blendheims commenced this Chapter 13 case, their Chapter 7 case was still open. And in that Chapter 7 case, the automatic stay was lifted to allow Lender to foreclose its lien on the Condo. The Blendheims filed a new case solely to re-impose the automatic stay and thwart Lender's foreclosure. Courts uniformly find that "simultaneous Chapter 20" cases commenced after the bankruptcy court granted stay relief in the first Chapter 7 case constitute bad faith filings. These courts find the second and simultaneous filings "abusive" of the Code and quickly

dismiss these cases.[3]  The Blendheims improperly filed a second and simultaneous

case, and the Blendheims could not remedy the bad faith with any plan.  Lender

submits there is a reasonable probability this Court will agree that the second case

was filed in bad faith and the Final Plan should not have been confirmed.

### c.    Lender Was Denied Due Process.

The Bankruptcy Rules mandate that any action determining the "validity,

priority or extent of a lien…" be brought by commencing an adversary proceeding.

Fed. R. Bankr. P. 7001(2).  This requirement ensures that the creditor is

"specifically put on notice that the validity of its lien is at issue…."  *In re

Brawders*, 503 F.3d 856, 871 (9th Cir. 2007).  The Blendheims made no mention

of lien avoidance in their objection to Lender's claim, obtained the Default Order

by a motion, and that order was the sole basis for voiding Lender's lien.  While the

lien was technically voided in the Adversary Proceeding, it was *substantively*

voided by the Default Order.  In sum, this Bankruptcy Court's interpretation of the

Bankruptcy Rules meant the avoidance of Lender's lien was a *fait accompli* upon

---

[3] These cases include *In re Barnes*, 231 B.R. 482, 485 (E.D.N.Y 1999); *In re Turner*, 207 B.R. 373,. 379 (B.A.P. 2nd Cir. 1997); *In re Pingleton*, 2003 WL 21976028, at *2 (Bankr. C.D. Ill. 2003); *In re Lord*, 295 B.R. 16, 17, 20 (Bankr. E.D.N.Y. 2003); *In re Brown*, 399 B.R. 162, 170 (Bankr. W.D. Va. 2009); *In re Scruggs*, 320 B.R. 94, 95-97 (Bankr. D.S.C. 2004); *In re Humbreto*, 2000 WL 760696 (Bankr. E.D. Pa. 2000) (filing a second case while another case open to invoke a new automatic stay is a "procedural gambit" that had not been allowed in any of the reported cases and "cannot be tolerated in any circumstances."); *In re Hodurski*, 156 B.R. 353, 357 (Bankr. D. Mass. 1993); *In re Standfield*, 152 B.R. 528, 539 (Bankr. N.D. Ill. 1993); *In re Martin*, 97 B.R. 1013, 1016-17 (Bankr. N.D. Ga. 1989).

entry of the Default Order. Lender believes it has stated a substantial case for the merits on this issue.

### 2. Irreparable Harm.

A creditor should be granted a stay of a Chapter 13 plan confirmation order pending appeal if some action will be taken during the appeal process that would cause the creditor irreparable harm. *See*, *e.g.*, *In re Moreau*, 135 B.R. 209, 214-15 (N.D.N.Y. 1992) (stay pending appeal granted because, absent a stay, the debtors would go forward with their refinancing plan, and the secured creditor would be forced to accept satisfaction of the debt at a loss of $21,516.92).

In this case, Lender will be irreparably harmed if the Court does not prevent the Blendheims from transferring any interests in the Condo until Lender has completed its appeal. Now that the Blendheims have completed their plan payments, Lender's lien will soon be voided by operation of the Orders on Appeal. The Blendheims will be able to convey an interest in their property to a third party free of Lender's lien and Lender will suffer a permanent loss. If the Blendheims sell the Condo, Lender could never have its lien reinstated even if it prevails on appeal. Further, if the Blendheims keep their home but convey a lien to another lender, then Lender's lien would be junior to this new lien regardless if the appeal is successful. Lender needs the stay to prevent such irreparable loss.

The District Court ruled against Lender because it has not presented evidence that the Blendheims intended to transfer or encumber the Condo. Addressing the *Moreau* decision, the District Court noted that the debtor in that case had "taken steps" toward a refinancing plan that would irreparably harm the creditor absent a stay pending appeal. Order Denying Stay at 7. Based on the facts

of that case, the District Court concluded Lender needs to produce evidence the Blendheims are taking steps toward conduct that would harm Lender. But the debtors in *Moreau* were still under the supervision of the bankruptcy court when they started taking steps contemplated by the plan confirmation order the creditor had appealed. 135 B.R. at 211. The Blendheims, however, will be completely outside of the purview of the Bankruptcy Court and will not have to provide any notice to anyone of any actions they take with respect to the Condo. Lender will not be able to find out if the Blendheims intend to convey an interest in the Condo, and can only find out if they conveyed after the fact by checking the King County Property Records. Even if Lender could depose or examine the Blendheims to find out their intentions, they could testify that they have no intentions to transfer an interest in the Condo today, but are free to change their minds tomorrow. Lender submits that it is unreasonable to expect Lender to provide evidence of any intention, and it is precisely because Lender cannot ascertain what the Blendheims intend to do that a stay is necessary.

**3. Whether a Stay Will Substantially Injure Other Interested Parties.**

In this case, a stay would preserve the status quo and cause no substantial harm to any other parties. There will be no harm to the Blendheims by delaying their ability to transfer or encumber the Condo for a short period of time. Lender's lien has been on the Condo for years. And the Blendheims have not paid anything to either Lender or HSBC for years. A stay may delay their ability to transfer an interest in the Condo, but they will continue to live there essentially rent-free, paying only the monthly Association dues. *See Moreau*, 135 B.R. 209 (since

debtors continued to enjoy protection from creditors, the Debtors would not suffer any hardship by a delay in the completion of their plan).

The District Court opined that granting a stay would prevent the Blendheims from receiving a "fresh start" free of debt. At this time, however, the Blendheims have completed their plan payments and have therefore are free of their debts. For the reasons stated above, the Blendheims are not entitled to be "free" from Lender's lien, so the status quo should be maintained until the appeal is resolved. Temporarily delaying their ability to transfer or encumber the Condo will not deny the Blendheims a "fresh start."

### 4. Serious Legal Questions Affecting the Public Interest.

There is a split of authority among the lower courts within the Ninth Circuit on whether a Chapter 13 debtor who is ineligible for a discharge may still propose a plan to permanently strip a wholly unsecured lien from the debtor's residence. Some courts hold Chapter 13 debtors who are ineligible for a discharge may not permanently strip off liens,[4] while other courts allow Chapter 13 debtors to permanently strip liens without a discharge.[5] The Fourth Circuit Court of Appeals

---

[4] *In re Lilly*, 378 B.R. 232, 236 (Bankr. C.D. Ill. 2007); *In re Casey*, 428 B.R. 519, 523 (Bankr. S.D. Cal. 2010); *In re Jazo*, 2010 WL 3947303, at *2 (Bankr. S.D. Cal. Sept. 28, 2010); *In re Collins*, WL 5173840, at *2 (Bankr. D. Or. Dec. 15, 2010).

[5] *In re Crone*, 2012 WL 6212856, at *1 (Bankr. N.D. Cal. Dec. 13, 2012; *In re Tran*, 431 B.R. 230, 235 (Bankr. N.D. Cal. 2010), *aff'd*, 814 F. Supp. 2d 946 (N.D. Cal. 2011); *In re Hill*, 440 B.R. 176, 182 (Bankr. S.D. Cal. 2010); *In re North*, 2012 WL 4919788, *3 (Bankr. N.D. Cal. Oct. 15, 2012); *In re Frazier*, 448 B.R. 803, 807 (Bankr. E.D. Cal. 2011), *aff'd*, *Frazier v. Real Time Resolutions, Inc.*, 469 B.R. 889, 895 (E.D. Cal. 2012); *Hart v. San Diego Credit Union*, 449 B.R. 783, 792 (S.D. Cal. 2010); *In re Grignon*, 2010 WL 5067440, at *4 (Bankr. D. Or.

recently issued the very first opinion from a circuit court on this issue. *See In re Davis*, --F.3d--, 2013 WL 1926407 (4th Cir. 2013). And while the case held Chapter 20 lien strips are permissible, it was split decision – the Honorable Barbara Milano Keen wrote a firm and cogent dissent, further demonstrating that there is no consensus yet on this important issue.

Lien-stripping in "Chapter 20" cases is debated all over the land. A front-cover article of a recent issue of *American Bankruptcy Institute Journal* examined this topic. Alston Dec. at Ex. K. The article discusses the Fourth Circuit's decision in *Davis*, details the split among courts in several jurisdictions, and notes the Eleventh Circuit Court of Appeals recently granted a petition for direct appeal on this very issue. *Id*. Lender respectfully disagrees with the District Court's conclusion that this case is unlikely to have a wide-reaching effect on non-parties. Whether Chapter 20 debtors have the right to permanently strip liens is important to many people who have filed or are contemplating filing a Chapter 13 case, and decision from this Court will have a great impact on these non-parties.

## C.  <u>Any Bond Should Be Addressed to the Blendheims' Potential Damages.</u>

If the Court is inclined to condition the stay on the posting of a bond, the amount of the bond should be based on the net sales value of the Condo less the current balance secured by the lien of HSBC (which was not stripped), plus interest on that value pending the appeal. According to the Blendheims' motion to strip-off HSBC's lien, the Condo was worth $328,000. (Alston Dec. at Ex. L). As of November 2009, the amount secured by HSBC's lien was $90,474. *Id.* Under the terms of HSBC's loan documents, the obligation has been accruing interest at

Dec. 7, 2010); *In re Pecho*, 2012 WL 5180341, *3 (Bankr. N.D. Cal. Oct. 18, 2012); *In re Vo*, 2012 WL 5180701, at *2 (Bankr. N.D. Cal. Oct. 18, 2012).

11.35%, which amounts to approximately $10,215 per year (or $851.25 per month) on a balance of about $90,000. Alston Dec. at Exhibit M. As of September 2013, the amount secured by HSBC's lien will be approximately $129,157.

Assuming a sale of the Condo at $350,000, after deducting standard costs of sale of 8%, and the amount that would be paid to HSBC, the Blendheims would net approximately $193,000. The current federal judgment interest rate is 0.12%. Using that interest rate, the additional amount to include in the bond to cover the loss of the use of those funds over the next 18 months would be approximately $347. Any bond should not include an additional amount for attorneys' fees (which this Court denied the Blendheims) or any other unjustified costs. In short, any bond should not exceed $194,000.

## IV. CONCLUSION

For the reasons stated above, Lender requests that the Court grant this Motion and enter an order that stays the Lien Avoidance Order, the Plan Confirmation Order, and the Implementation Order pending completion of Lender's appeal to this Court.

DATED this 22nd day of August, 2013.

FOSTER PEPPER PLLC

*s/ Christopher M. Alston*

Christopher M. Alston, WSBA No. 18823
W. Adam Coady, WSBA No. 44165
Attorneys for Appellant
1111 Third Ave. Suite 3400
Seattle, WA 98101
T. 206-447-2906/ F. 206-749-7253
Email: alstc@foster.com,
         coadw@foster.com

## <u>CERTIFICATION PURSUANT TO CIRCUIT RULE 27-3(b)</u>

Lender, by its undersigned counsel, certifies that a stay of the Lien Avoidance Order, Plan Confirmation Order, and Implementation Order is needed prior to the entry of an order by the Bankruptcy Court to close the Blendheims' case, which could happen as early as October 7, 2013, in order to avoid irreparable harm to Lender.  This certification is based upon the facts and analysis stated above.

DATED this 22nd day of August, 2013.

*s/ Christopher Alston*_____
Christopher M. Alston

# PROOF OF SERVICE

I, Lisa Cachopo, declare as follows:  I am employed with the law firm of Foster Pepper PLLC whose address is 1111 Third Avenue, Suite 3400, Seattle, Washington 98101.  I am readily familiar with the business practices of this office for collection and processing of correspondence for first class mail, hand-delivered and overnight delivery via express courier, and I am over the age of eighteen years and not a party to this action.

On August 22, 2013, I served the following:

1.     Urgent Motion for Stay Pending Appeal.

on the below parties in this action as indicated below:

| | |
|---|---|
| Taryn M. Darling Hill<br>Impact Law Group<br>719 2nd Ave., Ste. 700<br>Seattle, WA  98104<br>(206) 734-3757<br>Email: taryn@impactlawgroup.com<br>Attorneys for Appellees Robert S.<br>and Darlene G. Blendheim<br>**Via Messenger and ECF as**<br>**Participant in the Electronic**<br>**Court Filing Notice List** | K. Michael Fitzgerald<br>Jason Wilson-Aguilar<br>Office of Chapter 13 Trustee<br>600 University Street, Suite 2200<br>Seattle, WA  98101-4152<br>(206) 624-5124<br>Email: mfitz@seattlech13.com,<br>jwilson.aguilar@seattlech13.com<br>**Via Messenger** |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22nd day of August, 2013 at Seattle, Washington.

/s/ Lisa Cachopo
_____
Lisa Cachopo